# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**F. THOMAS SCHORNHORST**
Oxford, Mississippi

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Aug 27 2012, 9:47 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IAN MCCULLOUGH, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1106-PC-571 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey L. Marchal, Commissioner
Cause No. 49G06-0602-PC-36340

**August 27, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary and Issue

Ian McCullough was convicted of two counts of class A felony child molesting and one count of class C felony child molesting. His convictions were affirmed on direct appeal, and he then sought post-conviction relief ("PCR"), arguing that he received ineffective assistance of trial counsel. The post-conviction court denied McCullough's PCR petition.

On appeal, McCullough argues that his trial counsel was ineffective (1) in offering and failing to object to evidence of prior uncharged misconduct and failing to object to the prosecutor's references to that misconduct; (2) in failing to adequately cross-examine the State's investigators; (3) in failing to make an offer of proof when the trial court excluded his expert's testimony; (4) in failing to present expert evidence of child memory; (5) in failing to present certain evidence; and (6) in failing to tender or request the jury instruction mandated by the Protected Person Statute. We conclude that McCullough has failed to carry his burden to show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Therefore, we affirm the post-conviction court's judgment.[1]

## Facts and Procedural History

The facts underlying McCullough's convictions were set forth in the memorandum decision issued on direct appeal as follows:

---

[1] We held oral argument on May 1, 2012, in Indianapolis. We commend counsel for their able advocacy.

2

L.D. (DOB 1/22/98) is the daughter of Sarah Calvert and Jason Dees. When L.D. was approximately one year old, [Sarah] began dating McCullough, and eventually moved in with him. During the next few years, the couple had two children together, E.M. (DOB 5/14/2000) and M.M. (DOB 6/4/2002). However, in 2003 or 2004, the couple separated. Thereafter, L.D. lived with her mother, [Sarah], in Greenfield, while E.M. and M.M. lived with their father, McCullough, in Indianapolis. On weekends, L.D. would visit with McCullough, whom she referred to as "daddy," and her half-sisters. When she stayed overnight at McCullough's home, L.D. slept in bed with him or in a different room with E.M. and M.M.

At some time before L.D. entered pre-school, McCullough touched her vagina with his fingers. McCullough touched L.D. inappropriately more than once over the next few years. Twice he touched her vagina with his tongue while they were in his bed at his home. Another time, McCullough touched L.D.'s vagina with his finger while she sat in the seat next to him in his vehicle. In the fall [of] 2005, McCullough inserted his finger in L.D.'s vagina. McCullough referred to his actions as a "tickle" and instructed L.D. not to tell anyone lest he get in trouble.

In early December 2005, Judy Calvert ("Judy"), L.D.'s maternal grandmother, with whom she was living at the time, said that L.D. would be visiting with McCullough for the weekend. L.D. became upset, and questioned if she had to go. Moved by L.D.'s tears and pleading, Judy told her she did not have to go but asked why L.D. was reluctant. L.D. replied that she had been masturbating, that she had taught E.M. how to do it, and that she worried that it was wrong. When Judy attempted to assure L.D. that her behavior was not bad per se, L.D. inquired whether it was okay for McCullough to be touching her private parts. Shaking and crying, L.D. confided in her grandmother that McCullough would stop if L.D. asked him to; L.D. made Judy promise not to tell anyone else.

Upon [Sarah's] return home, Judy immediately shared L.D.'s statements with her, and they took L.D. to Riley Children's Hospital that same night. Riley employees and/or [Sarah] reported the allegations to Child Protective Services ("CPS").

*McCullough v. State*, No. 49A02-0805-CR-411, slip op. at 2-4 (Ind. Ct. App. Jan. 13, 2009) (citations omitted).

On February 13, 2006, Diane Bowers, a forensic child interviewer with the Child Advocacy Center, conducted a videotaped interview of L.D. during which L.D. used anatomical drawings and her hands to explain what McCullough did ("the Bowers Interview"). State's Trial Ex. 1. During the interview, L.D. told Bowers about an incident that occurred when she was three years old and lived in California ("the California Claim"). L.D. said that while she was sleeping in bed with Sarah and McCullough, McCullough got on top of her, "his private" touched her "you know what," and it went inside "a lot." State's Trial Ex. 2 at 66-69 (transcription of the Bowers Interview). L.D. also stated that she told Sarah that "Daddy's pee was tickling mine," and that Sarah "just screamed … you had sex?" at McCullough. *Id*. at 69. L.D. did not know whether McCullough responded.

Lucita Exom-Pope, an investigator with the Indiana Department of Child Services, was monitoring the interview. Later that day, Exom-Pope interviewed Sarah and asked her about the California Claim. Her report ("the Exom-Pope Report") states in relevant part as follows:

> Sarah was asked when living in California if [L.D.] ever said anything to her about being touched by [McCullough], Sarah stated [L.D.] told her the neighbor's son had touched her while in California. She stated that boy was 6 years old. She also stated [L.D.] was 3 or 4 at the time and was not able to speak clearly. She stated she yelled at the neighbor's father not at [McCullough] about touching [L.D.].

Petitioner's Ex. 4 at 10.

Indiana Police Detective Jan Faber was assigned to investigate L.D.'s allegations. Detective Faber watched the Bowers Interview and interviewed Sarah and Judy.[2] Detective Faber did not read the Exom-Pope Report. In February 2006, the State charged McCullough with two counts of class A felony child molesting and one count of class C felony child molesting, for offenses that occurred between August 1 and December 3, 2005.

After charging McCullough in the instant case, the State charged McCullough in a separate cause with molesting L.D.'s half-sister, E.M. PCR Tr. at 99. Trial counsel represented McCullough in this cause as well. *Id.* At some point, E.M. recanted the accusation, and the case was dismissed in December 2007 about a week before the trial in the instant case. *Id.* at 179-80.

Trial counsel attempted to depose Sarah as part of his preparation for trial but was unable to do so. On January 2, 2007, the trial court ordered the State to contact Sarah and have her contact McCullough's counsel no later than January 9, 2007, to schedule and attend a deposition and that if Sarah failed to do so, her testimony would be excluded. Petitioner's Ex. 2 at 169. Sarah did not contact trial counsel.

The trial court held hearings on August 17 and September 6, 2006, on the admissibility of the Bowers Interview and Judy's hearsay testimony regarding L.D.'s disclosure to her in December 2005. The trial court found both sufficiently reliable to be admitted into evidence.

---

[2] She also watched another recorded interview of L.D. that was not admitted at trial.

5

A jury trial was held on December 17 and 18, 2007. At the outset, McCullough's counsel filed a motion in limine requesting that the trial court enforce its previous order and exclude Sarah's testimony, which the trial court granted. Petitioner's Ex. 2 at 340. Also, the State sought to admit the Bowers Interview, but, in contrast to the recording submitted at the admissibility hearing, L.D.'s comments regarding the California Claim had been redacted. McCullough's counsel objected to the redaction and argued for the entire Bowers Interview to be admitted into evidence. Appellant's App. at 56 (¶ 53); Trial Tr. at 305-09, 317. The State argued that L.D.'s statements pertaining to the California Claim violated Indiana Evidence Rule 412[3] and that "[i]t is the right of the victim not to have to testify about those prior incidents of conduct." Trial Tr. at 311. The trial court stated,

> [H]ow in the world does the, the fact that – I'm, I'm just having really a hard time. The victim makes an allegation that when she was three that she had sex with this person. How in the world does that have anything negative, a negative impact on the victim? It strikes me as being incredibly bad for the defendant *unless the State's concern is that this is a prior example of a false allegation*. And if it is, then it is absolutely relevant.

*Id*. at 312 (emphasis added). The prosecutor argued that "what we believe the Defense wants to do with this allegation is to bring it in so that they can prove that it's demonstrably false within the context of the trial, which is not appropriate." *Id*. at 314-15. The trial court responded,

---

[3] Indiana Evidence Rule 412 provides in relevant part that in a prosecution for a sex crime, evidence of the victim's past sexual conduct is inadmissible except in certain circumstances such as evidence of the victim's sexual conduct with the defendant but then only upon written motion and a hearing held thereon.

It strikes me as being extremely prejudicial on behalf, to the defendant, not to the victim whatsoever. And so I'm, I'm just really having a problem there unless the reason why the State doesn't want it there is simply because it gets into the point of previous false allegations, which strikes me as that's the very essence of what these cases are all about.

*Id*. at 318-19. The trial court ultimately admitted the entire Bowers Interview.

In beginning his opening argument, McCullough's counsel stated,

[L.D.] said the words that the State just recited to you, but those aren't the only words she said. The evidence is going to show you that [L.D.] said a lot of things that just don't make sense. [The] State left out that [L.D.] also claimed when she was three [McCullough] put his penis inside her. A lot of his penis inside her. That she couldn't feel that, that she told her mother, and her mother just quizzically asked, you had sex? And nothing else followed. [L.D.] said that, too.

*Id*. at 550-51. Trial counsel also argued that the "internal inconsistencies" in L.D.'s statements "don't make sense." *Id*. at 551.

During its case-in-chief, the State presented the testimony of L.D., Judy, Bowers, and Detective Faber. During direct examination of L.D., the prosecutor asked whether she remembered what grade she was in when McCullough touched her private with his tongue and fingers. L.D. answered, "Kindergarten, first, and second, and pre-school." *Id*. at 564. McCullough's trial counsel did not object.

During cross-examination of L.D., McCullough's counsel asked her, "You've also said that he touched you with another part of his body, haven't you?" *Id*. at 578. L.D. said, "[Y]eah … [i]n California," McCullough "used his private," it was "inside" her private, and "it was moving." *Id*. McCullough's counsel asked her how far inside it went, but L.D. said that she did not know. *Id*. Trial counsel asked L.D. what it felt like, and L.D. responded, "I don't know, really." *Id*. at 579. L.D. testified that Sarah was

7

asleep in the bed but had no idea what was happening. L.D. also testified that she told Sarah that "Daddy's pee pee was tickling [her] pee pee," but Sarah did not understand and did not ask any questions. *Id*.

In cross-examining Judy, McCullough's counsel questioned her about her inconsistent statements regarding the reason that L.D. told her that she did not want to visit McCullough. Specifically, he asked her about her testimony during her deposition:

> You said in response to what [L.D.] had told you when she made this first, or why she didn't want to go to [McCullough's], quote, we went into my bedroom and she said to me that, that she had taught [E.M.] to play with herself, to masturbate. Do you remember saying that under oath?

*Id*. at 611-12. Judy answered, "Yes." *Id*. at 612.

McCullough's counsel also cross-examined Bowers and Detective Faber. He asked Bowers whether she personally witnessed any of the allegations and whether she was "just going on what [L.D.] told [her]." *Id*. at 649. Bowers answered, "That's true." *Id*. He asked Detective Faber to confirm that she was not an eyewitness to any of the allegations against McCullough and that she had no personal knowledge about whether the allegations occurred, and she agreed. *Id.* at 657. Then he asked her, "You're going solely on what you were told by [L.D.] and her family," and she replied, "That's correct." *Id*.

To rebut the State's case, McCullough's counsel presented the testimony of McCullough's mother and father, private investigator Charles Martin Perkins, and McCullough. McCullough's parents testified that McCullough had asked for advice on how to discipline L.D. *Id*. at 663-71. McCullough's father also testified that he had

8

witnessed L.D. misbehave and that she would try to avoid punishment. *Id*. at 671-72.

Perkins testified that he was a former police detective and had received more than eighty

to a hundred hours of specialized training in the area of investigating rape and child

molestation. *Id*. at 686-87. He testified that he had significant experience in

investigating sex crimes and that as a police detective he had investigated at least forty-

four suspects against whom charges had been filed as well as other suspects against

whom charges ultimately had not been filed. *Id*. at 687-88. Perkins had been a private

investigator for four years. *Id*. at 689.

McCullough's counsel then questioned Perkins regarding his standard practice for

investigating allegations of sexual molestation. *Id*. at 692-94. McCullough's counsel

also asked Perkins what he did to investigate McCullough's case. Perkins testified that

he read trial counsel's entire file (except for privileged information), read everything that

was produced during discovery, reviewed the Bowers Interview, and visited L.D.'s

school to interview the principal and review her school records. *Id*. at 695-97. Perkins

testified that he read approximately 170 pages and spent 150 hours investigating the case.

*Id*. at 708. McCullough's counsel asked Perkins if he had received separate records from

Child Protective Services ("CPS"), and the State objected. *Id*. at 697.

The trial court held a recess to address the objection outside the presence of the

jury. Trial counsel argued that the evidence was relevant to show that the State's

investigation was poor. *Id*. at 698. Trial counsel also argued that he wanted Perkins to

testify as to his impression of the Bowers Interview. *Id*. at 703. The trial court granted

the State's objection, ruling that Perkins could testify to the total number of documents he

looked at but could not refer to CPS documents. The trial court further ruled that Perkins could testify to the general characteristics he looks for in assessing child interviews but could not testify about particular statements made in the Bowers Interview because that would invade the province of the jury. *Id*. at 706-707. Trial counsel did not make an offer to prove.

Trial counsel then asked Perkins what he looked for when assessing a recorded child interview like the one in this case. Perkins offered the following explanation:

> In watching the child and watching the interviewer, the questions, the way that they are posed to the child, whether or not they happen to ask a child a question that would cause them to answer in a particular way, body language, eye contact, and the overall child's attitude to the interviewer and to the totality of the circumstances.

*Id*. at 709. Perkins also testified that he did not hold a degree as a clinical psychologist but that the training that he had received from the "[FBI], the Indiana State Police, and from the National Child Abuse Defense Resource Center in Las Vegas, all circled around the psychological aspects and the trauma as a result of, of child abuse and what to look for when certain things are there, and when certain things are absent." *Id*. at 715-16.

McCullough testified last. During his direct examination, trial counsel read McCullough each of the charges, and McCullough specifically denied committing each of those acts. *Id*. at 718-19. In addition, McCullough specifically denied ever molesting L.D. at any time. *Id*. at 719. McCullough further testified that he had disciplined L.D. "[f]or masturbating and, and messing with herself," and "had caught her several times." *Id*. at 772.

During closing argument, the prosecutor stated, "The last time [L.D.] remembers it happening she was seven. Oh, but she described that it could have happened six, seven, maybe even younger than that, but the last time I remember I was seven years old, I was at his house." *Id*. at 780. McCullough's counsel did not object.

During his closing argument, McCullough's counsel argued to the jury that L.D.'s testimony was "uncertain," "confused," and "lost." *Id*. at 787-88, 795. He argued that the reason that L.D. was uncertain was because the molestations did not happen. *Id*. at 788. McCullough's counsel argued that the State's investigation was poor, stating, "I believe our evidence regarding our investigation is clearly, clearly more thorough than the State's investigation." *Id*. at 786. McCullough's counsel pointed out that Judy's trial testimony as to what L.D. told her in December 2005 was inconsistent with Judy's earlier statement that L.D. told her that she did not want to go to McCullough's house because she had taught her sister to masturbate. *Id*. at 792-93. McCullough's counsel argued that Bowers improperly questioned L.D. by asking leading questions:

> [Bowers asked L.D.] are you saying the last time that something happened he touched your you-know-what with his finger. That's exactly what the person who conducted this interview took the stand and told you she wasn't supposed to do, to lead [L.D.], put words in her mouth. But what's her answer? I don't know. Okay, or his tongue. Leading. She's begging her to make their case. Or his tongue. Answer, I'm not sure. Okay, so what is it you remember about the last time. The last time. Question, nothing. Answer, I don't know. She's lost. She's lost because she got confused and now she can't get back, because what she's trying to go to isn't reality.

*Id*. at 796. McCullough's counsel also argued that L.D.'s California Claim was "incredible" and that was "consistent with none of this having happened and [McCullough] being innocent." *Id*. at 797.

11

During rebuttal, the prosecutor stated, "California, I wish I could charge it, but that's not my jurisdiction. I wish I could charge in California what he did to her, what she testified that he did to her, what she told Diane Bowers that he did to her." *Id*. at 802. McCullough's counsel did not object.

The jury found McCullough guilty as charged. The trial court sentenced McCullough to thirty years with ten suspended for each of the class A felony convictions and four years for the class C felony conviction, to be served concurrently.

McCullough appealed, arguing that the trial court improperly denied his motion for discharge, improperly admitted a statement L.D. made to an investigator, and committed fundamental error by instructing the jury that evidence of the slightest penetration was sufficient to sustain a child molesting conviction, and that the prosecutor committed misconduct during closing argument by saying "walk" to indicate acquittal. *McCullough*, slip op. at 2. We found McCullough's arguments unavailing and affirmed his convictions.

On April 21, 2009, McCullough filed a pro se petition for PCR alleging that he had received ineffective assistance of trial counsel. Appellant's App. at 34, 100-10. On April 27, 2010, McCullough, by counsel, filed an amended PCR petition, in which he alleged additional claims of ineffective assistance of trial counsel and withdrew some of the claims from the initial petition. *Id*. at 134-39. Following a hearing, on June 3, 2011, the post-conviction court issued a fifty-five page order, consisting of 265 findings of fact and conclusions of law, in which it concluded that McCullough had not been denied

effective assistance of trial counsel and denied his petition. Appellant's App. at 45-99.

The order provides in relevant part as follows:

31. [Trial counsel] was admitted to practice law in the State of Indiana in 1996. His practice is exclusively in the area of criminal defense.

32. [Trial counsel] had extensive prior felony jury trial experience before representing McCullough in this matter and had handled sex offense cases both as a deputy public defender and as private counsel.

33. In his previous experience with sex offense cases, [trial counsel] had dealt with the issue of child memories and had received continuing legal education training on issues related to the defense of child molest cases.

34. [Trial counsel's] pre-trial performance included conducting in excess of ten meetings with McCullough and other family members before trial, conducting discovery that included a review of several hundred pages of documents provided by the State, filing separate requests for specific discovery, seeking production of documents from several non-parties, deposing or attempting to depose certain State's witnesses and seeking continuances of the trial date in order to conduct these depositions, conducting cross-examination of [Sarah, L.D., E.M.], and Judy at the child hearsay hearing, submitting proposed findings of fact and conclusions of law on the child hearsay testimony, filing a Notice of Intent to Rely on Leaned [sic] Treatises, filing witness lists, successfully seeking to exclude the testimony of [Sarah], moving to compel production of the Child Protective Services file in this case, attending a hearing on his request to compel production of said file, moving to exclude evidence obtained through CPS, filing a Motion for Discharge pursuant to Indiana Criminal Rule 4(C), filing an Objection to Change of Docket, attending pre-trial hearings including a show cause hearing, hiring an investigator to conduct an independent review of the State's evidence, and formulating a theory of defense for trial.

35. In preparing the case, [trial counsel] considered and investigated the possibility that [Sarah] was motivated to make a false claim of molest against McCullough and coached [L.D.] to make these allegations.

….

52. As [trial counsel] believed that [L.D.'s] claim of molestation while in California was demonstrably false, he wanted to present this information to

13

the jury. [Trial counsel] knew that he could have objected to any reference to the uncharged incident in California but decided not to.

….

54. [Trial counsel] described this evidence as a two edge sword. He recognized that while this evidence could be a powerful impeachment tool, there was a danger in presenting to a jury evidence of a prior molest allegation. Understanding the risk, [trial counsel] fought to have the jury hear this evidence.

….

57. [Trial counsel's] decision to present evidence to the jury regarding the uncharged California molest claim was a reasonable and deliberate choice of trial strategy.

….

63. [Susan] Lukasha [McCullough's mother] provided [trial counsel] with the name of a potential out-of-state expert witness, Dr. Maggie Bruck ("Bruck"), who may have been able to testify as to certain trial issues such as child testimony, false sexual allegations, and memory implantation.

64. [Trial counsel] read a published work written by Bruck on sexual allegations made by children and contacted her office about the possibility of serving as an expert witness for the defense.

65. [Trial counsel] conducted research at the Indiana University Medical School regarding certain articles contained in the annotations of Bruck's work. Perkins also reviewed the book.

66. Although [trial counsel] listed Bruck as a potential defense witness, eventually he declined to call her as a witness. Instead he sought to present evidence through a private investigator, such as former Indiana State Police Detective Perkins, as to the faults in the State's investigation of the case.

67. Having decided to utilize the services of Perkins, [trial counsel] did not consider using other expert witnesses on topics such as child memory and suggestibility.

….

14

69. At trial, [trial counsel's] performance included seeking a motion in limine which was granted, in part, arguing for the admission of evidence of past claims by [L.D.] of molestation, conducting voir dire, seeking to remove certain potential jurors for cause, raising an objection to one of the Court's preliminary instructions, presenting an opening statement, cross-examining the State's witnesses, arguing for the admission of evidence that [L.D.] was disciplined for masturbating and teaching E.M. to masturbate, seeking a directed verdict on Count III of the charging information, presenting testimony of four (4) defense witnesses, including McCullough, and presenting a cogent closing argument.

….

263. Through his presentation of evidence and argument, McCullough has shown that [trial counsel] could have conducted the defense to these charges in an entirely different manner, both in terms of defense theories and techniques. The Court agrees that counsel could have taken any number of other approaches to this case. However, the fact that a given criminal case may be defended more thoroughly or aggressively does not necessarily mean that [trial counsel's] strategy was deficient, even if the strategy was unsuccessful.

264. To the extent that McCullough can point to a mistake by his counsel, such an error does not warrant the relief he seeks. Whether these perceived mistakes are viewed cumulatively or individually, McCullough has failed to demonstrate that his counsel rendered deficient representation. "Petitioner is not entitled to a perfect trial, but is entitled to a fair trial, free of errors so egregious that they, in all probability, caused the conviction." *Oliver v. State*, 843 N.E.2d 581, 586 (Ind. Ct. App. 2006)[, *trans. denied*.] The Court remains unconvinced that any errors on the part of trial counsel, either cumulatively or in isolation, caused McCullough's conviction.

*Id*. at 52-53, 56-59, 98 (citations and footnote omitted).

McCullough appeals. Additional facts will be provided.

**Discussion and Decision**

*Standard of Review*

This is an appeal from the denial of a PCR petition.

15

We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. [Ind. Post-Conviction Rule 1(1)]. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (citations omitted), *trans. denied*.

### *Ineffective Assistance of Trial Counsel*

McCullough contends that the post-conviction court erred in finding that he was not denied the effective assistance of trial counsel. The Sixth Amendment to the United States Constitution protects the right to counsel and the right to effective assistance of counsel.[4] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Clark v. State*, 668

---

[4] The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense."

N.E.2d 1206, 1211 (Ind. 1996), *cert. denied* (1997).  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance.  *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *cert. denied* (2001).  A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).  To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001).  Failure to satisfy either prong will cause the claim to fail, but most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone.  *French*, 778 N.E.2d at 824.  Further, "[e]rrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively."  *Pennycuff v. State*, 745 N.E.2d 804, 816-17 (Ind. 2001); *see also Williams v. State*, 508 N.E.2d 1264, 1268 (Ind. 1987) ("[W]hile each error of counsel individually may not be sufficient to prove ineffective representation, an accumulation of such failures may amount to ineffective assistance.").

In the instant case, we believe that the post-conviction court's findings and judgment should be entitled to greater than usual deference because the same judge conducted McCullough's original trial and therefore is uniquely situated to assess whether his counsel's performance fell below an objective standard of reasonableness

17

based on prevailing professional norms, and whether, but for counsel's unprofessional conduct, there was a reasonable probability that the jury would have reached a different verdict. *See State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003) (noting that because judge presided at both original trial and post-conviction hearing, judge was in "an exceptional position" to assess weight and credibility of factual evidence and whether defendant was deprived of fair trial). We observe that the post-conviction court's judgment, consisting of fifty-five pages and 265 findings of fact and conclusions of law, reveals a thorough and comprehensive consideration of McCullough's claims of ineffective assistance of trial counsel.

McCullough alleges that trial counsel committed numerous errors. Specifically, he argues that his trial counsel was ineffective (1) in affirmatively seeking to offer evidence of the California Claim and in failing to object to evidence of prior uncharged misconduct and the prosecutor's references to that misconduct; (2) in failing to adequately cross-examine the State's investigators; (3) in failing to make an offer of proof when the trial court excluded Perkins's testimony; (4) in failing to present expert testimony with respect to childhood memory and suggestibility; (5) in failing to present evidence that L.D. had witnessed oral sex in the past and that Sarah had personal and financial motives to encourage L.D. to falsely accuse McCullough; and (6) in failing to tender or request the jury instruction required by the Protected Person Statute. McCullough asserts that the cumulative effect of trial counsel's conduct satisfies both prongs of *Strickland* and therefore constitutes ineffective assistance.

18

### *1. Prior Uncharged Misconduct*

McCullough argues that his trial counsel provided ineffective assistance with respect to prior uncharged misconduct in several instances: his decision to expose the jury to the California Claim; his failure to object to testimony referring to other prior uncharged misconduct; his failure to object to improper closing argument regarding the California Claim and other prior uncharged misconduct; and his failure to request a limiting instruction as to the California Claim. The State argues that trial counsel's decisions were part of a reasonable defense strategy.

"Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference." *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), *trans. denied.* "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

Our review of the record before us reveals that trial counsel conducted extensive investigation into the charges against McCullough before deciding on a defensive strategy that would underscore that (1) L.D. made unbelievable claims and was unable to provide a coherent account of the charged molestations and (2) the State's investigation into her claims was inadequate and its proof rested solely upon L.D.'s statements. *See* Appellant's App. at 52-53 (¶¶ 34-36) and 56-58 (¶¶ 52, 62-67). We conclude that at the outset of trial, trial counsel had formulated a reasonable and sound defense strategy.

19

Nevertheless, as a trial unfolds, events occur, some unexpected, that counsel must react to in real time. Thus, an appellate court cannot compare counsel's real-time performance to what might have been done with the benefit of hindsight. *See Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000) ("The judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight."). Just because counsel is unable to pursue a reasonable defensive strategy as effectively as he or she wanted to does not mean that the plan was a bad plan. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Woodson v. State*, 961 N.E.2d 1035, 1041-42 (Ind. Ct. App. 2012) (citation and quotation marks omitted), *trans. denied*. "There is no constitutional requirement that a defense attorney be a flawless strategist or tactician." *Id.* at 1042. In the case at bar, our review of the record reveals that trial counsel's performance during trial was consistently aimed at executing his deliberately chosen defense strategy.

Regarding trial counsel's decision to expose the jury to the California Claim, McCullough recognizes that "[e]vidence of a demonstrably false claim of a prior sexual assault by a complaining witness is admissible for impeachment purposes." Appellant's Br. at 19 (citing *State v. Walton*, 715 N.E.2d 824, 828 (Ind. 1999)). He further notes that "[w]hen the case against an accused depends on the credibility of a complaining witness, proper presentation of false claim impeaching evidence is a strong defensive shield." *Id.* (citing *Ellyson v. State*, 603 N.E.2d 1369, 1374-75 (Ind. Ct. App. 1992)). However, McCullough claims that trial counsel did not have an effective plan to demonstrate the

20

falsity of the California Claim and unwisely ran the risk that the jury would draw the propensity inference forbidden by Indiana Evidence Rule 404.[5]

Specifically, McCullough faults his trial counsel for excluding Sarah as a witness because her account of the California Claim indicated that a six-year old boy committed the alleged sexual act. The post-conviction court found that trial counsel "preferred exclusion to unanticipated testimony as [trial counsel] did not want to take the chance that [Sarah] would make new accusations," and the decision "to seek exclusion of [Sarah's] testimony was a reasonable strategic choice." Appellant's App. at 55 (¶¶ 46, 49). The record shows that McCullough's trial counsel attempted on numerous occasions to depose, interview, and contact Sarah, but was unsuccessful. PCR Tr. at 113. Trial counsel was aware that Sarah and McCullough were involved in a custody dispute and that E.M. had alleged that McCullough had molested her and had recanted the allegation. In light of these circumstances, there was an appreciable risk that Sarah would provide unpredictable testimony that would be detrimental to McCullough's case; as such, we conclude that the decision to exclude Sarah rather than risk unpredictable testimony was reasonable.

Moreover, just because trial counsel did not demonstrate the falsity of the

---

[5] Indiana Evidence Rule 404(b) provides,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

California Claim in the manner that McCullough, with the benefit of hindsight, argues that trial counsel should have does not mean that counsel's assistance was ineffective. The record shows that trial counsel did use the California Claim to undermine the charged molestation allegations. In his opening argument, McCullough's counsel developed his theme that L.D. was prone to making up unbelievable stories. He stated that L.D. "said a lot of things that just don't make sense." Trial Tr. at 550. He pointed out that the "State left out that [L.D.] also claimed when she was three [McCullough] put his penis inside her. A lot of his penis inside her." *Id.* Trial counsel cross-examined L.D. about the California Claim and elicited testimony that when McCullough put "his private" inside her private, it was moving, but she did not know how far inside her it went or what it felt like, and that her mother was asleep in the bed right next to her when it happened. *Id.* at 578-79. L.D. also testified that when she later told her mother what happened, her mother did not understand what L.D. was talking about. *Id.* at 580. The jury later viewed and was provided with the transcript of the Bowers Interview. Significantly, L.D.'s trial testimony regarding the California Claim differs from her description of it in the Bowers Interview, in which she stated that McCullough's "private" went inside "a lot," and Sarah screamed, "[Y]ou had sex?" State's Trial Ex. 2 at 17-18. On its face, the California Claim is dubious. L.D.'s inconsistent statements about what allegedly occurred in California cast serious doubt on her credibility.[6]

---

[6] To the extent that McCullough argues that trial counsel erred in failing to submit the March 2006 medical report of Dr. Roberta Hibbard's examination of L.D., we observe that the report concludes that L.D.'s "examination neither supports nor negates concerns of sexual contact." Petitioner's Ex. 13. Accordingly, the report was of minimal probative value and any prejudice resulting from the failure to introduce the report is insignificant.

Also at trial, McCullough testified in his own defense and specifically denied committing the act that was alleged in the California Claim.[7] Trial Tr. at 722. In addition, McCullough not only denied that he committed any of the molestations during the time period as charged, but he also denied that he ever committed such acts at any time. *Id.* at 718-19.

McCullough also contends that his counsel provided ineffective assistance when he failed to object to L.D.'s testimony on direct examination that McCullough molested her when she was in second grade, first grade, kindergarten and pre-school. *Id.* at 564. In light of trial counsel's strategy of emphasizing to the jury that L.D. made unbelievable claims, McCullough has failed to show that he was prejudiced. L.D.'s testimony may have added strength to trial counsel's argument that she could not provide a coherent description of the alleged acts.[8] In fact, trial counsel was able to argue in his closing statement that L.D.'s lack of coherence indicated that her allegations were not true. *See id.* at 787-88, 795.

Another alleged error is that trial counsel failed to make objections during closing argument. Specifically, he argues that trial counsel erred in failing to object to the prosecutor's comment that L.D. said that McCullough molested her when she was "six, seven or even younger," and to the prosecutor's comment that she wished that she could

---

[7] The dissent asserts that trial counsel did not introduce any evidence to prove the falsity of the California Claim. McCullough's testimony is evidence of the falsity of the California Claim.

[8] At the post-conviction hearing, McCullough's trial counsel recognized the reference to uncharged misconduct and had no explanation or tactical reason for failing to object. PCR Tr. at 187-88. To the extent that trial counsel had no explanation for failing to object, we observe that courts should not insist that attorneys "'confirm every aspect of the strategic basis for his or her actions.'" *Woodson*, 961 N.E.2d at 1041 (quoting *Harrington v. Richter*, 131 S.Ct. 770, 790 (2011)).

23

charge the California Claim. *Id*. at 780, 802. The post-conviction court found in relevant part:

> 110. [Trial counsel] raised no objections during the State's final argument. [Trial counsel] does not routinely interject potential objections during the State's closing argument as it may give the prosecution the opportunity to reinforce damaging evidence.
>
> 111. The Court finds that [trial counsel's] failure to challenge these comments did not prejudice McCullough and any timely objection to these statements would not have affected the outcome of the trial.

Appellant's App. at 66 (citation omitted). We believe that trial counsel's lack of objection is consistent with his defense strategy. *See Wrinkles v. State*, 749 N.E.2d 1179, 1197 (Ind. 2001) (noting that counsel may have strategic reason for not objecting to prosecutor's remarks, and as such, failure to object is not ineffective assistance), *cert. denied* (2002). In his own closing argument, trial counsel described L.D.'s testimony as "confused," referred to L.D.'s California Claim as "incredible," and argued that L.D. did not have "her story together" with respect to the charged molestations. Trial Tr. at 796-98. Accordingly, McCullough has failed to persuade us that the evidence unerringly and unmistakably leads to a conclusion opposite of that of the post-conviction court. *See Fisher*, 810 N.E.2d at 679.

Finally, McCullough asserts that trial counsel erred in failing to ask for an instruction limiting the use of the California Claim for impeachment purposes.[9] *See* Ind. Evidence Rule 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the

---

[9] The post-conviction court did not explicitly address this issue in its conclusions of law.

24

court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly."). Although requesting a limiting instruction would have been the preferred practice, trial counsel's failure to request the limiting instruction is not inconsistent with the chosen defense strategy. Moreover, the absence of a limiting instruction does not rise to the level of prejudice necessary to constitute ineffective assistance. McCullough has failed to persuade us that there is a reasonable probability that but for the absence of a jury instruction limiting the use of the California Claim for impeachment purposes, the result of his trial would have been different. *See Shepherd*, 924 N.E.2d at 1280.

In sum, we conclude that the alleged errors relating to the California Claim and other prior uncharged misconduct are either consistent with trial counsel's deliberately chosen defensive strategy or do not result in any significant prejudice in light of the chosen defensive strategy. McCullough has failed to persuade us that the trial court erred in finding that trial counsel's conduct relating to prior uncharged misconduct did not constitute ineffective assistance.

### 2. Failure to Cross-Examine State Investigators

McCullough argues that even though the lack of proper investigation by the State was a main theme of trial counsel's defense, trial counsel's cross-examination of Bowers and Detective Faber failed to adequately advance this theme. The post-conviction court found that "[a]lthough the decision to rely primarily on the testimony of Perkins was unsuccessful at trial, the Court does not find that the decision to forego an aggressive cross-examination of Bowers and Faber to be an unreasonable choice of trial strategy." Appellant's App. at 63 (¶ 92).

25

In opening argument, trial counsel told the jury that the defense had "an investigator, and you'll hear about his investigation, and you can compare the two investigations." Trial Tr. at 553. Then, during his cross-examination of Bowers, trial counsel elicited testimony that Bowers relied solely on L.D.'s assertions as evidence of molestation. *Id*. at 649. As for Detective Faber, she testified on direct examination that her investigation consisted of viewing the Bowers Interview and interviewing Sarah and Judy, and that her investigation did not include an interview with L.D. *Id*. at 653-54. On cross-examination, trial counsel elicited testimony that Detective Faber relied solely on what she was told by L.D. and her family. *Id*. at 657. Thus, trial counsel's cross-examination of Bowers and Detective Faber showed that the State's investigation rested on an interview with the victim–the Bowers Interview–and interviews with the victim's family members. This cross-examination purposely and effectively advanced trial counsel's defense strategy to show the jury that the State's investigation was minimal. *See Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010) ("[T]he method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance."). McCullough's argument fails to persuade us that the evidence leads unerringly and unmistakably to a conclusion opposite of that reached by the post-conviction court. *See Shepherd*, 924 N.E.2d at 1280.

### 3. *Failure to Make an Offer of Proof*

McCullough contends that his trial counsel's failure to make an offer to prove regarding Perkins's testimony was ineffective assistance. The post-conviction court found in relevant part as follows:

26

84. As [trial counsel] was questioning Perkins about the CPS records that he reviewed during the course of his investigation, the State raised an objection and a hearing was held outside the presence of the jury.

85. [Trial counsel] argued that the evidence was necessary to call into question the quality of the State's pre-trial investigation. He also offered that he wanted Perkins to testify as to his impression of the forensic child interview conducted by Bowers.[10]

86. The trial court ruled that Perkins could not testify as to the contents of the CPS records he reviewed and limited the scope of the witness' testimony. Specifically, the trial court stated:

> He can testify as to the totality of the number of documents he's looked at, but not, but not from CPS. So CPS is, CPS is out in terms of permissible subject matter. In terms of your jail inquiry, he can indicate based on his training and experience what general characteristics he's looking for in terms of, of these types of statements. But again, that only, and only can parallel the information provided form [sic] the State in its direct. It cannot go to specific comments on this particular tape or this specific statement, because that does invade the province of the jury.

87. [Trial counsel] was surprised by the ruling and believed that the trial court had precluded him from presenting his witness in the manner he desired.

88. Given the ruling, Perkins offered this testimony of what he looked for in a forensic child interview:

> In watching the child and watching the interviewer[,] the questions, the way that they are posed to the child, whether or not they happen to ask a child a question that would cause them to answer in a particular way, body language, eye contact, and the, the overall child's attitude to the interviewer and to the totality of the circumstances. [Trial Tr. at 709.]

---

[10] The dissent's assertion that trial counsel did not argue that the trial court's ruling was erroneous seems to imply that trial counsel passively accepted the trial court's ruling. However, the record supports the post-conviction court's finding that trial counsel argued vigorously for the admission of Perkins's testimony. Trial Tr. at 698, 703.

….

93. To the extent that [trial counsel] may be faulted for failing to make an offer to prove the testimony of Perkins, as shown below, the Court finds that McCullough was not prejudiced by this omission.

….

97. Had he been permitted to testify further at trial, Perkins would have attested that in his view, Sgt. Faber's "objectivity may very well have been limited." [PCR Tr. at 166.] Perkins felt that the child custody case and the possible suicide attempt by [Sarah] were important issues to be investigated and disagreed with Faber's assessment that these issues were not important. He also believed that Faber should have asked questions of [Sarah] regarding the California molest allegation. Had he been Faber's supervisor, Perkins would have instructed her to conduct her interview with [Sarah] a second time.

….

101. In sum, if Perkins had been permitted to continue with his testimony as planned, he would have raised certain criticisms about how Faber conducted her investigation and how Bowers conducted the interview of [L.D.]. However, McCullough has not shown that the use of an expert in the field of sex crimes investigation such as Perkins would have produced a different result at trial. The proffered testimony merely presented an alternate method of conducting such an investigation and does not persuade the Court that the investigation and forensic child interview led to an unjust result.

….

245. At trial, [trial counsel] did not make an offer to prove following the trial court's limitation of Perkins' anticipated testimony related to his investigation of the case and his critique of the State's investigation. Although he was well aware of the procedure for making a valid offer of proof, he does not recall why he did not make such an offer. To the extent it failed to properly preserve an evidentiary question for appellate review, [trial counsel's] performance fell below prevailing professional norms.

246. The Court concludes that McCullough's argument fails to satisfy the prejudice prong of *Strickland*. As recited above, if Perkins had been permitted to continue with his testimony as planned, he would have been

critical of Faber's objectivity and questioned the manner in which Faber conducted her investigation. Perkins also would have instructed her to conduct her interview with [Sarah] a second time.

247. Despite his unfamiliarity with basic forensic child interview techniques, Perkins would have questioned how Bowers conducted her interview of [L.D.].

248. Even though Perkins would have investigated more into [Sarah's] background, he was unable to interview her prior to trial. Similarly, he did not interview [L.D.], Faber, Bowers, or any other possible witnesses before trial.

249. Perkins' proffered testimony presented an alternate method of conducting an investigation of child molestation. However, the evidence presented on post-conviction does not persuade the Court that the failure to make an offer of proof and preserve the issue for appeal led to an unjust result. No prejudice has been shown here.

Appellant's App. at 62-65, 93-94 (citations omitted).

At the post-conviction hearing, McCullough's trial counsel testified that he wanted to expose weaknesses in the State's investigation through Perkins, that this was a "critical part" of the evidence, and that he thought the case was prejudiced by his inability to present such evidence. PCR Tr. at 256-57. In his brief, McCullough argues that Perkins would have testified that the State's investigation was biased and incomplete and that Bowers's interview questions were suggestive and could have influenced L.D. Appellant's Br. at 13-14, 28. As previously noted, we cannot compare counsel's real-time performance to what might have been done with the benefit of hindsight. *See Talley*, 736 N.E.2d at 769. Our review of the record shows that despite the unexpected curtailment of Perkins's testimony, trial counsel was still able to pursue his chosen strategy, albeit not as effectively as he had anticipated. Trial counsel elicited testimony

from Perkins regarding his standard practice for investigating allegations of sexual molestation. Trial Tr. at 692-94. Perkins also testified that he spent 150 hours investigating McCullough's case, which included reading 170 pages of material and visiting L.D.'s school. *Id*. at 694-97, 708. Methods of conducting child forensic interviews were also explored. Trial counsel was able to elicit testimony from Perkins that in assessing a forensic interview with a child, Perkins would watch to see whether the interviewer said anything that prompted a specific response and look at the child's demeanor and the totality of the interview. *Id*. at 709.

The jury had evidence from which to assess the State's investigation and the Bowers Interview. The jury had been informed as to how Bowers and Detective Faber had investigated the case. The jury knew that Bowers had interviewed L.D. The jury knew that Detective Faber had viewed the Bowers Interview and interviewed Sarah and Judy. The jury viewed the Bowers Interview, so the jury knew exactly what Bowers and Detective Faber relied on. The jury was free to compare Bowers and Detective Faber's investigation with Perkins's investigation. In addition, the jury was informed of Perkins's approach to child interviews and was free to apply it to the Bowers Interview. Based on the evidence presented at trial, trial counsel was able to argue in his closing statement that the State's investigation of the case was poor. Specifically, he stated, "I believe our evidence regarding our investigation is clearly, clearly more thorough than the State's investigation." *Id*. at 786. Trial counsel argued that the State "proved that [McCullough] was accused, that's what they proved," and then proceeded to highlight all the shortcomings in the State's case. *Id*. Trial counsel also emphasized the shortcomings

30

of the Bowers Interview, specifically pointing out that Bowers had asked L.D. leading questions even though Bowers herself had testified that she should not ask such questions. *Id*. at 795-96. Given the evidence introduced at trial, we are unpersuaded that but for counsel's failure to make an offer of proof, there is a reasonable probability that the verdict would have been different.[11]

### 4. *Failure to Present Expert Testimony*

McCullough contends that trial counsel provided ineffective assistance in failing to present expert testimony with respect to childhood memory and suggestibility. McCullough argues that "[w]hile Mr. Perkins by experience and training was competent to explain to the jury the serious deficiencies in the State's investigation, he was not qualified … to testify on the critical issues of child psychology that were involved." Appellant's Br. at 30. At the post-conviction hearing, McCullough produced Dr. Richard Lawlor, a practicing clinical psychologist and professor emeritus of the Indiana University School of Medicine, Department of Psychiatry, who testified as to how

---

[11] McCullough asserts that the post-conviction court "applied an incorrect standard requiring petitioner to show that had he presented the evidence he would have been acquitted." Appellant's Br. at 29 (citing Appellant's App. at 73 (¶160) and 94 (¶¶ 247-49)). We disagree. The post-conviction court found that *McCullough argued* that he would have been acquitted:

> 160. A significant portion of *McCullough's claim* is devoted to the argument that if [trial counsel] had developed the testimony of Faber and Bowers more thoroughly, Perkins would have been permitted to testify as to the weakness in the State's investigation and McCullough would have been acquitted.

Appellant's App. at 73 (emphasis added). However, in its conclusions of law, the post-conviction court stated that "the evidence presented on post-conviction does not persuade the Court that the failure to make an offer of proof and preserve the issue for appeal led to an unjust result." *Id*. at 94 (¶ 249). We read the post-conviction court's use of "unjust result" as synonymous with the required standard, namely "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *See French*, 778 N.E.2d at 824.

31

children may form false memories and what kind of clues are suggestive of the formation of a false memory.

The post-conviction court found that trial counsel and McCullough discussed using Dr. Maggie Bruck as an expert who could testify as to childhood memory and false sexual allegations. Appellant's App. at 57-58 (¶¶ 62, 63). Trial counsel read Dr. Bruck's book on sexual allegations made by children and read some of the articles contained in the annotations of Bruck's work. *Id*. at 58 (¶¶ 64, 65). The post-conviction court concluded that trial counsel "made an objectively reasonable choice in selecting a person of Perkins' background to testify rather than someone with Lawlor's expertise." *Id*. at 83 (¶ 207).

At the post-conviction hearing, trial counsel testified that he had not found academic experts to have been particularly helpful over the years and preferred to go with more practical experts. PCR Tr. at 248. For that reason, trial counsel decided to use Perkins rather than Dr. Bruck. We observe that "in the context of an ineffective assistance claim, 'a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.'" *Curtis v. State*, 905 N.E.2d 410, 415 (Ind. Ct. App. 2009) (quoting *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind. Ct. App. 2005), *trans. denied*); *see also Wrinkles v. State*, 749 N.E.2d 1179, 1200 (Ind. 2001) ("Which witnesses to call is the epitome of a strategic decision.") (citation and quotation marks omitted), *cert. denied* (2002). McCullough has not carried his burden to overcome the strong presumption that counsel provided effective assistance in electing to call

Perkins rather than Dr. Bruck as a witness.[12]

### 5. *Failure to Present Evidence*

McCullough asserts that trial counsel was ineffective in failing to present evidence that L.D. had witnessed oral sex in the past and that Sarah had personal and financial motives to encourage L.D. to falsely accuse McCullough.

As to evidence that L.D. had witnessed oral sex, McCullough contends that trial counsel erred in failing to call Israel Hurst, a friend of McCullough, as a witness. The post-conviction court found in relevant part:

> 162. Had he been called to testify at trial, Petitioner's witness Israel Hurst would have described a prior incident at an unspecified time in which [L.D.] was exposed to the videotaped images of females engaging in oral sex. He also claimed that [Sarah] engaged in "strip dancing" for men in [L.D.'s] presence.
>
> ….
>
> 166. [Trial counsel] spoke with Hurst during his preparation of the case and was aware of his potential as a witness. At the evidentiary hearing, McCullough did not ask [trial counsel] why he chose not to call Hurst as a witness at trial.
>
> 167. McCullough has not shown that [trial counsel's] failure to call Hurst as a trial witness was objectively unreasonable.
>
> ….

---

[12] McCullough argues that the standard of prejudice applied by the post-conviction court on this issue was incorrect. Appellant's Br. at 33 n.21. Specifically, the post-conviction court found, "Although the Court finds that Lawlor is a much more enlightening and interesting witness than Perkins, McCullough has not shown that the use of an expert in the field of child psychology such as Dr. Lawlor would have produced a different result at trial." Appellant's App. at 77 (¶ 181). We observe that the petitioner on post-conviction relief is required to show that there is "a reasonable probability" that the result of the proceeding would have been different. *See French*, 778 N.E.2d at 824. Here, we need not reach the prejudice prong because we find that counsel's conduct does not fall below "an objective standard or reasonableness based on prevailing professional norms." *See id*.

33

241. …. As McCullough did not ask [trial counsel] why he chose not to call Hurst as a witness at trial, the Court concludes that McCullough has not shown the failure to call this witness was objectively unreasonable. No prejudice is shown here.

Appellant's App. at 74-75, 93 (citations omitted). We agree with the post-conviction court that McCullough failed to carry his burden to show deficient performance.

As for evidence that Sarah had personal and financial motives to encourage L.D. to falsely accuse McCullough, McCullough contends that trial counsel failed to call E.M. as a witness. The post-conviction court found in relevant part:

121. The Court denied McCullough's request to call [E.M.] to testify at the [PCR] hearing. McCullough made an offer of proof as to the substance of [E.M.'s] testimony:[13]

… [E.M.] would testify that following her being taken from the custody of her father and put in the custody of her mother, and this is subsequent to the charges that were filed against, or at least brought against Mr. McCullough. [E.M.] remembers a conversation with the mother, in which the mother told her that Mr. McCullough had inappropriately touched her in her private area. She said at that time she believed what her mother told her. Later said that did not happen and she recanted that and she did not believe her father had abused her in any way. That would be the evidence we would have put in via [E.M.], had we been permitted. My argument is that's circumstantial evidence of improper coaching on the part of the mother and [L.D.] as well.

---

[13] The post-conviction court cited page 333 of the PCR transcript, but we found this offer of proof on page 376.

34

Appellant's App. at 68 (citation omitted).[14]

Trial counsel testified at the PCR hearing that he had spoken to E.M., knew that she had recanted, and had seen notes from E.M.'s counselor that indicated there "may have been improper influence with respect to [E.M.]." PCR Tr. at 180-82. Trial counsel testified that in considering whether to use that evidence he "really thought we would be able to develop that during [E.M.'s] trial." *Id*. at 183. Trial counsel also testified that he did not have a tactical explanation for not using the evidence of improper influence with respect to E.M. at L.D.'s trial. *Id*. We find trial counsel's testimony on cross-examination revealing:

Q:    The – you testified that the –that the two cases [E.M.'s and L.D.'s] were interrelated, is that correct?

A:    Yes.

Q:    But they obviously were not interrelated in the sense that they happened at the same time, did they?

A:    No.

Q:    They involved the same family essentially, is that correct?

A:    Yes.

Q:    And they arose out of the same potential motives that you wanted to

---

[14]    The State baldly asserts that E.M.'s testimony would have been inadmissible hearsay. Appellee's Br. at 24. *See* Ind. Evidence Rule 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Ind. Evidence Rule 802 ("Hearsay is not admissible except as provided by law or by these rules."). McCullough contends that "the statements attributed to Sarah by E.M. were not hearsay, but were verbal acts (words having independent legal significance apart from their truth) constituting an attempt to induce E.M. to bear false witness against her father." Appellant's Reply Br. at 16-17 (citing *Tyler v. State*, 903 N.E.2d 463 (Ind. 2009)). However, *Tyler* is inapposite because it does address an issue involving verbal acts. Given the lack of a developed argument on both sides, we assume without deciding that E.M.'s testimony would have been admissible.

develop for – to prove that – the potential motives were there for both, is that correct? Is that how they were interrelated?

A: I don't think [E.M.] had anything like the same the [sic] motives that [L.D.] had, no and I never thought that. I think they were completely [sic] and that was one of the problems in switching from prepping for [E.M.] to prepping for [L.D.] with short notice. The defense and the motives and the causation of the statements in [E.M.] - the theories on those were *not even remotely related to the same type of defense* as [L.D.].

Q: But did they still involve the potential for suggestibility, the potential for the issue regarding child support and all those sorts of things?

A: Not as clearly the child support. The suggestibility because it was the same investigators and interviewers, yes.

*Id*. at 278-79 (emphasis added).

Trial counsel's testimony reveals that he did not think that the root sources of the children's molestation allegations against McCullough were the same. Unlike E.M., L.D. had allegedly been disciplined for masturbation and her desire to avoid discipline was presented to the jury as a possible explanation as to why L.D. would fabricate a claim of molestation. Trial counsel brought out this explanation in his cross-examination of Judy and through the direct testimony of McCullough and both his parents. E.M.'s proffered testimony was not supportive of or in any way related to trial counsel's deliberately chosen strategy. In light of trial counsel's defense strategy, we are unpersuaded that counsel's failure to present E.M.'s testimony constitutes ineffective assistance.

### 6. Failure to Request Jury Instruction

Finally, McCullough argues that trial counsel was ineffective in failing to tender or request the instruction required by the Protected Person Statute ("PPS"). The PPS

permits the admission of otherwise inadmissible hearsay evidence relating to specified crimes, including child molesting, if certain requirements are met. Ind. Code § 35-37-4-6. When a court admits a statement or videotape pursuant to the PPS, the court must instruct the jury as follows:

> [I]t is for the jury to determine the weight and credit to be given the statement or videotape and that, in making that determination, the jury shall consider the following:
>
> > (1) The mental and physical age of the person making the statement or videotape.
> >
> > (2) The nature of the statement or videotape.
> >
> > (3) The circumstances under which the statement or videotape was made.
> >
> > (4) Other relevant factors.

Ind. Code § 35-37-4-6(h). McCullough's trial counsel neither tendered the instruction nor objected to the trial court's failure to read it to the jury.

> The post-conviction court's order provides in relevant part,
>
> 229. Even if the Court assumes that [trial counsel's] failure to have the jury instructed as mandated by the Protected Persons Statute fell below an objective standard of reasonableness, McCullough has not carried his burden to show that but for his counsel's omission, there is a reasonable probability that he would have been found not guilty. The jury was instructed on a wide range of issues, including its right to determine the law and the facts, various factors to consider in determining witness credibility, and its ability to disregard the testimony of a witness.
>
> 230. Given the evidence presented, the Court cannot conclude that [trial counsel's] oversight was so serious an omission as to overcome the presumption of adequate performance.

Appellant's App. at 89-90.

Assuming, without deciding, that trial counsel's failure to tender the PPS instruction or object to the trial court's failure to read it to the jury constitutes deficient performance,[15] given the substance of the instructions actually given by the trial court, we conclude that any prejudice resulting from such deficiency does not rise to the level of prejudice required by *Strickland*. The jury was provided with the following preliminary instruction:

> You are the exclusive judges of the evidence, which may be either witness testimony or exhibits. In considering the evidence it is your duty to decide the value you give to the exhibits you receive and the testimony you hear. In determining the significance of a witness's testimony, some factors you may consider are the witness's ability and opportunity to observe; the behavior of the witness while testifying; any interest, bias, or prejudice the witness may have; any relationship with people involved in the case; the reasonableness of the testimony considering the other evidence; your knowledge, common sense, and life experiences.

Trial Tr. at 544.

This instruction adequately emphasized the importance of the jury's role in determining the value to be given to the exhibits and the in-court testimony. This would include L.D.'s recorded statement as well as her in-person testimony. Also, the jury members were instructed that they could use their own common sense, knowledge, and

---

[15] The post-conviction court concluded that the absence of the instruction mandated by Indiana Code Section 35-37-4-6(h) does not constitute deficient performance per se, citing *Curtis*, 905 N.E.2d 410. Appellant's App. at 89 (¶ 228). However, the *Curtis* court did not consider whether counsel's failure to tender the instruction required by Indiana Code Section 35-37-4-6(h) constituted deficient performance. Rather, the *Curtis* court agreed with the post-conviction court's conclusion that because the victims' videotaped statements were *admitted by stipulation* of the parties and *not* pursuant to the PPS, the trial court was not required to provide the PPS instruction, and therefore defense counsel's failure to request the PPS instruction did not constitute ineffective assistance. 905 N.E.2d at 417. In dicta, the *Curtis* court noted that "the record indicates that the jury received numerous instructions on the issue of assessing witness credibility. Thus, even if a specific instruction pursuant to the child hearsay statute had been appropriate, its absence was not prejudicial." *Id.*

life experience to evaluate the evidence. Although the instruction did not single out L.D.'s videotaped statement for special scrutiny, it advised the jury that it had a duty to evaluate the value of all the evidence. In addition, trial counsel argued in closing that the Bowers Interview should be viewed with caution because Bowers asked L.D. leading questions during the interview. Accordingly, McCullough has failed to carry his burden to show that had his trial counsel successfully tendered the mandatory PPS instruction, there is a reasonable probability that the outcome of his trial would have been different.

Based on the foregoing, we conclude that McCullough was not denied the effective assistance of counsel. Therefore, we affirm the post-conviction court's denial of McCullough's petition for relief.

Affirmed.

MAY, J., concurs.

BROWN, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IAN MCCULLOUGH, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1106-PC-571 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

**Brown, Judge, dissenting.**

I respectfully dissent as I conclude that the cumulative effect of trial counsel's errors entitles McCullough to post-conviction relief. As acknowledged by the majority, "[e]rrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." Pennycuff v. State, 745 N.E.2d 804, 816-817 (Ind. 2001). See also Grinstead v. State, 845 N.E.2d 1027, 1036-1037 (Ind. 2006) ("Certainly, the cumulative effect of a number of errors can render counsel's performance ineffective."). The verdict in this case rests primarily upon L.D.'s statements and "logic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record

40

support.'" Hilliard v. State, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting

Strickland v. Washington, 466 U.S. 668, 696, 104 S. Ct. 2052, 2069 (1984)).

McCullough's trial counsel was preparing to try E.M.'s case when, four days

before E.M.'s trial date, her case was dismissed and L.D.'s case was substituted for trial.

McCullough's trial counsel unsuccessfully sought a continuance.

With respect to the uncharged misconduct, trial counsel did not object during the

direct examination of L.D. when she addressed uncharged misconduct by indicating that

McCullough had molested her in second grade, first grade, kindergarten, and before pre-

school even though this testimony was inadmissible under Ind. Evidence Rule 404(b).[16]

At the post-conviction hearing, trial counsel recognized the reference to uncharged

misconduct and had no explanation or tactical reason for failing to object.

As to the California Claim, trial counsel acknowledged that such evidence was

inadmissible under Ind. Evidence Rule 404, but chose to expose the jury to the California

Claim because "if it's demonstratively false, it's a powerful impeachment tool, to show

that demonstratively false prior accusations of the same kind have been made." Post-

Conviction Transcript at 116. Trial counsel based his belief that the California Claim

---

[16] Ind. Evidence Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The State does not respond specifically to McCullough's reliance on Rule 404(b) or argue that any of the exceptions would have applied.

41

was false on "[p]rimarily medical evidence but also what was related to [him] about her visit to California by family members" as well as McCullough's testimony. Id. However, trial counsel did not introduce medical evidence even though such a report existed, or the testimony of family members, or any other evidence to prove the falsity of the California Claim.[17] Id. at 125-126. McCullough's counsel also did not object when the prosecutor, clearly improperly, referred to uncharged misconduct during closing argument or during rebuttal when the prosecutor stated: "*California, I wish I could charge it, but that's not my jurisdiction. I wish I could charge in California what he did to her, what she testified that he did to her, what she told Diane Bowers that he did to her.*" Trial Transcript at 802 (emphasis added). Moreover, McCullough's trial counsel did not request a limiting instruction or admonishment to indicate that the jury's use of the evidence of the California Claim was limited to impeachment purposes.[18] See Ind. Evidence Rule 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly."). In this case, where the only direct evidence supporting the charges was

---

[17] A medical report signed by Dr. Roberta Hibbard indicated her following impression of L.D.: "It is my impression that [L.D.'s] anogenital examination is within normal limits. This examination is consistent with and neither supports nor negates concerns of sexual contact." Petitioner's Exhibit 13. When asked whether he concluded from the report that he did not have evidence of physical manifestations of the California incident, McCullough's trial counsel stated: "Yes, within normal limits indicated to me, lack of any major physical trauma you would expect. Again in conjunction with Mr. Perkins, who had investigated these types of offenses and his familiarity with what should have been present, had it been true. That seemed inconsistent." Post-Conviction Transcript at 136-137. To the extent that the reliance of McCullough's trial counsel on the medical report to support his belief in the falsity of the California Claim was reasonable, he did not introduce the medical report at trial.

[18] The post-conviction court did not explicitly address this issue in its conclusions of law.

42

the testimony of the accuser, it is highly probable that the jury drew the forbidden propensity inference in reaching its verdicts. See Sundling v. State, 679 N.E.2d 988, 992-994 (Ind. Ct. App. 1997) (holding that the trial court erred by permitting testimony regarding uncharged acts of sexual misconduct by the defendant and that a substantial likelihood existed that the forbidden inference contributed to the verdict given that the only evidence of each instance of child molestation came from the victims), reh'g denied; Tucker v. State, 646 N.E.2d 972, 978 (Ind. Ct. App. 1995) (holding that trial counsel's performance in failing to object, move to strike, or request an admonishment of the jury with respect to the defendant's criminal history was deficient, and that it could not be said that the references to the defendant's criminal history did not impact the jury's decision where the evidence was not overwhelming, and reversing for a new trial).

Trial counsel's cross-examination of Bowers and Detective Faber consisted solely of two questions to each. Specifically, trial counsel asked Bowers whether she personally witnessed any of the allegations and whether she was "just going on what [L.D.] told her." Trial Transcript at 649. Similarly, the cross-examination of Detective Faber consisted of asking her whether she was an eyewitness to any of the allegations against McCullough and whether she had any personal knowledge about whether the allegations occurred. Id. at 657. Among other questions that might have constituted adequate cross-examination, trial counsel did not ask any questions which would have revealed that Detective Faber 1) had not read the preliminary report of alleged child abuse or neglect from Riley Hospital or Exom-Pope's 311 Report; 2) had not asked Sarah about a custody dispute with McCullough regarding E.M. and M.M.; 3) did not discover that Sarah

43

allegedly failed to pay child support for E.M. and M.M.; 4) was not aware that Sarah might be concerned about future arrests for non-support because she was expecting a fourth child and had no steady employment; 5) was unaware that Sarah had applied for public assistance for E.M. and M.M.; 6) attached no importance to the effects on L.D. of Sarah's mental state, history of substance abuse, and attempted suicide; 7) was on notice that L.D. had some problems but made no inquiry as to their nature; 8) was not concerned about the time lapse between L.D.'s first report to the grandmother and the first interview nine weeks later; and, 9) did not inquire as to whether L.D. may have feared discipline from McCullough for more recent behavior.

With respect to McCullough's arguments regarding his trial counsel's failure to present expert testimony or to present evidence critical of the State's investigation, trial counsel testified at the post-conviction hearing that he intended to raise the theory of false memories and point out weaknesses in the testimony of Bowers and Detective Faber through Perkins's testimony. After the trial court limited Perkins's testimony to information that paralleled that provided by the State in its direct examination, trial counsel did not argue that the court's ruling was erroneous, make an offer of proof regarding Perkins's testimony, or present testimony that directly attacked the State's investigation. At the post-conviction hearing, trial counsel indicated that he desired to expose weaknesses in the State's investigation through Perkins, that this was a "critical part" of the evidence, and that he thought the case was prejudiced by not presenting such evidence. Post-Conviction Transcript at 256-257. At the oral argument held in this appeal, the State acknowledged: "Marty Perkins' testimony got curtailed by the trial

44

court, I think probably incorrectly." Oral Arg. at 00:21:40, *available at* https://mycourts.in.gov/arguments/default.aspx?view=detail&id=1345. The State also conceded that McCullough's trial counsel should have made an offer of proof and that his performance in that respect was below the standard of reasonableness based on prevailing professional norms. Id. at 00:21:50.

McCullough also argues that his trial counsel was ineffective for failing to call E.M. as a witness and failing to present evidence of Sarah's motives. Specifically, McCullough argues that E.M. "would have provided a basis for inferring that Sarah had induced L.D. as well as E.M. falsely to accuse McCullough of sexual molestation." Appellant's Brief at 34-37. McCullough argues that "[p]roof that Sarah induced E.M. to bring false charges against her father is circumstantial evidence that she may have engaged in similar behavior with L.D." Id. at 35. McCullough asserts that evidence of Sarah's personal and financial motives to wrest custody of E.M. and M.M. from McCullough was available to trial counsel and that this evidence provided a motive to induce L.D. to accuse McCullough of sexual misconduct. He argues that "[h]ad defense counsel presented the available evidence of Sarah's motives falsely to induce charges against [McCullough], plus her attempt to induce E.M. to claim that [McCullough] had abused her, the trial court would have been bound constitutionally to permit the evidence to be heard." Id. at 36-37. McCullough contends that "[h]ad the jury been so informed there is a reasonable probability that the outcome of the trial would have been different." Id. at 37.

The State argues that E.M.'s testimony would have been inadmissible as it would have been entirely based on hearsay. The State also argues that the relevance of E.M.'s testimony is tenuous at best because E.M. "would have been testifying about statements made to her by her mother in an unrelated case and [McCullough] would have been asking the jury to infer from the communication between E.M. and Sarah that a similar conversation occurred between L.D. and Sarah." Appellee's Brief at 24. In his reply brief, McCullough argues that "the statements attributed to Sarah by E.M. were not hearsay, but were verbal acts (words having independent legal significance apart from their truth) constituting an attempt to induce E.M. to bear false witness against her father." Appellant's Reply Brief at 17.

To the extent that the State suggests that E.M.'s testimony would not have been relevant, I disagree. The record reveals that L.D.'s sister E.M. was told by Sarah that McCullough had touched her inappropriately, that E.M. raised allegations that McCullough molested her after she was placed in Sarah's custody, and that E.M. recanted the allegations shortly before trial. Under the circumstances, I cannot say that this evidence is irrelevant. With respect to the State's argument that E.M.'s testimony would constitute inadmissible hearsay, I also disagree. See 13 MILLER, INDIANA PRACTICE § 801.305 ("Verbal conduct to which the law attaches legal significance, such as the contract on which suit is based, is not hearsay, although it is an out-of-court declaration. . . . Such evidence is offered to prove that the statements were made, rather than to prove the truth of the statements; hence the evidence is not hearsay.").

46

McCullough's trial counsel testified at the post-conviction hearing that E.M.'s allegations against McCullough arose for the first time after she was removed from McCullough's custody and placed in Sarah's custody, that trial counsel was aware that E.M. had recanted her allegations against McCullough, and that the case against McCullough involving E.M. was dismissed. Trial counsel indicated that he was more prepared to try the case involving E.M. than the case involving L.D. when E.M.'s case was dismissed. Trial counsel also indicated that he had access to therapy notes prepared by E.M.'s counselor which gave him some information as to whether there may have been improper influence with respect to E.M. When asked why this evidence was never presented at trial, McCullough's trial counsel indicated that he had no tactical explanation.

During direct examination, McCullough's post-conviction counsel asked trial counsel about an arrest warrant for Sarah issued about a month before the allegations made by L.D. based upon a contempt citation for her failure to pay support for E.M. and M.M., and trial counsel admitted that this evidence might have suggested a retaliatory motive for Sarah. Trial counsel also testified that he believed that Sarah "almost certainly" blamed McCullough for the writ body attachment warrant, and stated that he did not have a tactical explanation for not introducing evidence involving possible improper influence by Sarah on E.M. Post-Conviction Transcript at 145.

Additionally, trial counsel failed to tender or object to the trial court's failure to give the instruction mandated by Ind. Code § 35-37-4-6(h) regarding the jury's evaluation of hearsay statements received pursuant to the Protected Person's Statute. The

47

State relied heavily on the statements of the grandmother and the recorded video emphasizing their consistency with L.D.'s trial testimony. The prosecutor argued that the grandmother's hearsay evidence supplied corroboration of L.D.'s trial testimony. Trial counsel testified he was aware of the statute and had no tactical reason to explain his omission.

While some of the errors by trial counsel may not individually be sufficient to prove ineffective representation, when viewed cumulatively counsel's overall performance fell below the prevailing professional norms, and in light of the fact that the State's case rested almost entirely on L.D.'s statements, there is a probability sufficient to undermine confidence in the outcome that, but for trial counsel's errors, the result of the proceeding would have been different. Thus, I conclude that McCullough was denied the effective assistance of counsel. See Smith v. State, 511 N.E.2d 1042, 1046 (Ind. 1987) ("In the case before us the accumulation of errors mandates a finding of ineffective assistance."); Williams v. State, 508 N.E.2d 1264, 1268 (Ind. 1987) ("It is the compilation of errors and omissions by counsel which creates the necessity for reversal in this case.").

For the foregoing reasons, I respectfully dissent and would reverse the post-conviction court's denial of McCullough's petition for relief.