Dannie ENGRAM, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0801–CR–105.

Court of Appeals of Indiana.

Sept. 19, 2008.

Ann M. Sutton, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nichole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

Dannie Engram appeals his convictions for Murder, a felony, and Aggravated Battery, as a Class B felony, following a jury trial. Engram presents a single issue for review, which we restate as:

1. Whether the trial court abused its discretion when it denied his motion to dismiss.

2. Whether the trial court abused its discretion when it admitted into evidence the results of a ballistics test that had been performed three years earlier on Engram's handgun.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Engram was arrested in 2004 after a traffic stop during which he was found to be driving while his license was suspended. At the time of the stop, Engram informed the officer that he possessed a licensed .45–caliber handgun. Because of the arrest, the police officers took possession of Engram's gun. Pursuant to department policy, police had the weapon test-fired and recorded the results in the National Integrated Ballistics and Identification Network ("NIBIN").

On the evening of June 6, 2006, Jasmine Rice argued with Mark Buggs because Buggs had thrown a firecracker at Rice's daughter. The argument escalated into a physical altercation before the men were separated. Metia Manna, the child's mother and Rice's girlfriend, also quarreled with Buggs about the firecracker incident later in the evening. And in the early morning hours of June 7, the confrontations with Buggs about the firecracker incident began again. Rice's friend Kalin Kelly tried unsuccessfully to ease the tension. After a woman hit Manna in the head with a stick, Rice intervened, and the woman hit him with the stick as well. After Rice punched the woman, Buggs began fighting with Rice.

The fight between Buggs and Rice continued into the street. Witnesses reported seeing a light-skinned, heavyset man with braids or dreadlocks trying to pull Buggs off of Rice. Manna heard Buggs tell someone to shoot Rice. Several shots were fired, but no one saw the shooting. The group then scattered. Rice fell face forward, having been shot four times with a .45–caliber weapon. Kelly had been shot

in the lower abdomen near his hip. Rice died from gunshot wounds inflicted at close range, between one and two feet. Kelly recovered after receiving medical treatment.

On August 7, 2006, the State charged Engram with murder, a felony; attempted murder, a Class A felony; and aggravated battery, as a Class B felony, and the court issued a warrant for Engram's arrest. The charges and warrant were based on a probable cause affidavit in which Manna and Kelly identified him as the shooter.[1] On October 17, the State filed a notice of intent to admit evidence that Engram, at the time of a 2004 arrest, had been in possession of the same caliber of weapon that had been used to kill Rice. Firearms testing revealed that casings and bullets from the 2006 crime scene matched the signature obtained from a test-firing of Engram's gun in 2004 ("2004 ballistics test" or "ballistics evidence"). The trial court granted the State's motion to admit evidence after an evidentiary hearing. On October 26, Engram filed a motion to admit defendant to bail. During a hearing on the motion, Engram objected to alleged deficiencies in the probable cause affidavit that led to his arrest. The trial court denied Engram's motion.

On June 1, 2007, Engram filed a motion to suppress the results of the 2004 ballistics test. And on June 14, he filed a motion to dismiss the charges or, alternatively, to suppress the 2004 ballistics test results. After an evidentiary hearing on June 22 and supplemental briefing by both parties, the court denied both motions.

After a trial on December 10 and 11, 2007, a jury acquitted Engram of attempted murder but found him guilty of murder

and aggravated battery. The trial court sentenced Engram to fifty-five years for murder and ten years for aggravated battery, to be served consecutively, for an aggregate sentence of sixty-five years. Engram now appeals.

## DISCUSSION AND DECISION

### Issue One: Motion to Dismiss

Engram contends that the trial court should have granted his motion to dismiss the charges because the warrant issued for his arrest in this case was based on a probable cause affidavit that was misleading and omitted material information. In support he cites Indiana Code Section 35–33–2–1(b) and (c), which provides in relevant part:

(b) Whenever an information is filed and the defendant has not been arrested or otherwise brought within the custody of the court, the court shall issue a warrant for the arrest of the defendant after first determining that probable cause exists for the arrest.

(c) No warrant for arrest of a person may be issued until: . . .

(2) A judge has determined that probable cause exists that the person committed a crime and an information has been filed charging him with a crime.

He also cites Indiana Code Section 35–34–1–4(a)(11), which provides that a court may dismiss an indictment or information on any ground that is a basis for dismissal as a matter of law.

But Engram concedes that [g]enerally, the deficiency of a probable cause affidavit is not a ground for dismissal of an information as the probable

1. Manna had originally identified a photograph of a suspect in another shooting from that night as the gunman who shot Rice and Kelly. And Kelly testified that he identified Engram's photograph as resembling the shooter in this case but that he could not identify Engram as the shooter.

cause affidavit is not the manner by which a defendant is charged with a crime, but rather serves to justify the pre-trial detention of a defendant based on alleged facts reasonably believed to show the defendant committed the crime.

Appellant's Brief at 18. Even assuming that Engram's arrest was illegal, and we express no opinion on that issue, the lack of probable cause is not grounds for dismissing the charging information. *See Pond v. State*, 808 N.E.2d 718, 721 (Ind.Ct. App.2004), *trans. denied.* An invalid arrest does not affect the right of the State to try a case nor does it affect the judgment of conviction. *Id.* Thus, Engram's contention that the trial court should have dismissed the charges because his arrest was illegal is without merit.

### Issue Two: Admission of Evidence

Engram next contends that the trial court abused its discretion when it denied his motion to suppress the 2004 ballistics test. Specifically, he contends that the trial court should not have admitted that ballistics evidence into evidence because (1) that evidence was discovered as the result of his illegal 2006 arrest and (2) the inventory search performed in 2004 violated constitutional provisions against unreasonable searches. We address each contention in turn.

*Evidence as Product of Illegal Arrest*

Engram maintains that the results of the 2004 ballistics test should have been suppressed because the State "developed [that] additional evidence" as a result of his "unlawful[ ] arrest[.]" Appellant's Brief at 19. Specifically, he contends that his 2006 arrest was illegal because it was based on a probable cause affidavit that was misleading and omitted material information. He further argues that "the evidence that the State developed [the 2004 ballistics test] came about as a direct result of [his] arrest and bail hearing." Appellant's Brief at 19–20. We cannot agree.

■ Again, the legality or illegality of an arrest is pertinent to the admission of evidence only if that evidence is obtained through a search incident to the arrest. *Pond*, 808 N.E.2d at 721. Thus, we must first determine whether the evidence Engram sought to suppress, the 2004 ballistics test, was obtained incident to his 2006 arrest. We note that the ballistics evidence at issue was performed two years before the arrest that Engram contends was illegal. Thus, the evidence clearly existed and was in the possession of law enforcement prior to his 2006 arrest.

Engram also contends that the police department discovered the 2004 ballistics test only through its preparation to fight Engram's 2006 bail request. In other words, he contends that the police would not have connected him to the 2004 ballistics test but for the State's need to prepare for Engram's bail hearing. But Engram does not provide citations to the record to support that argument. Thus, the argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a). Moreover, we may reasonably infer that the police routinely check NIBIN, the national ballistics database, when attempting to solve a crime involving a firearm and that the State routinely checks the ballistics database when preparing such a case against a defendant. Engram has not shown that the evidence complained of was discovered as a result of his 2006 arrest. Thus, we need not determine whether Engram's 2006 arrest was invalid due to a defective probable cause affidavit. *See Pond*, 808 N.E.2d at 721.

*Unlawful Search*

■ Engram also argues that the results of the 2004 ballistic test should have been suppressed because the test was per-

formed without probable cause in violation of the Fourth Amendment.[2] As noted above, the police department test-fired Engram's handgun pursuant to a department policy. That policy required test-firing on all handguns of specified calibers that are in police custody, as well as documentation of the results in a national database. The constitutionality of routine test-firing by law enforcement of firearms legitimately in its custody is a matter of first impression. From the record it appears that the routine testing of firearms in the custody of the Indianapolis Police Department (now the Indianapolis Metropolitan Police Department) was commonplace in 2004, and there is no indication that the policy has changed in the interim. Thus, we consider whether the routine test-firing of firearms that are legitimately in police custody violates the Fourth Amendment.

■ The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind.2006) (citing U.S. Const. Amend. IV; *Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961))). The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Id.* (citing *Berry*, 704 N.E.2d at 465). The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *Id.* (citing *Fair v. State*, 627 N.E.2d 427, 430 (Ind.1993)). The propriety of a warrantless search is subject to de novo review. *See Holly v. State*, 888 N.E.2d 338, 341 (Ind.Ct.App.2008) (de novo review of whether reasonable suspicion existed to support investigatory stop).

■ A valid inventory search is a well-recognized exception to the warrant requirement. *Id.* But here the police department did not merely include Engram's handgun in an inventory. Instead, upon having legitimately taken custody of Engram's handgun pursuant to his 2004 arrest, police test-fired the handgun in accordance with a department policy that required test-firing of all firearms of certain calibers in police custody, regardless of the reason that the department had obtained custody of the weapon. Engram contends that the test-firing of the gun "constituted a search which exceeded the scope of any inventory or caretaking purpose." Appellant's Brief at 22. Thus, we must determine whether that test-firing policy constitutes a search protected by the Fourth Amendment.

Our Fourth Amendment analysis on this point embraces two questions. First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that "he [sought] to preserve [something] as private." *Bond v. United State*, 529 U.S.

---

2. At the end of his argument, Engram concludes that the "ballistic evidence should be suppressed pursuant to the Fourth, Fifth, and Fourteenth Amendments [of the federal Constitution] and Art. I, § 11 and § 12" of the Indiana Constitution. Appellant's Brief at 23. But because Engram provides analysis only as to an alleged violation of his rights under the Fourth Amendment, he has waived any argument under the Fifth Amendment or the Indiana Constitution. See Ind. Appellate Rule 46(A)(8)(a). As a result, we limit our review to his claim under the Fourth Amendment.

334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) (quoting *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (internal quotation marks omitted), *superseded by statute* ) (alterations original). "Second, we inquire whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.' " *Id.* (quoting *Smith,* 442 U.S. at 740, 99 S.Ct. 2577 (internal quotation marks omitted)).

 Here, Engram has not shown that he exhibited an actual expectation of privacy in the unique markings made by his handgun on bullets and casings fired from that weapon. Engram argues in his brief that he had an expectation of privacy, but he does not support that argument with citations to the record supporting that contention. As such, Engram has waived his claim that he had a subjective expectation of privacy in the unique markings made by his handgun.

Further, Engram has not shown that the markings made by his firearm on bullets and casings constitutes a privacy interest that society is prepared to recognize as reasonable. Indeed, society has a substantial interest in maintaining a record of firearms confiscated by law enforcement incident to a valid arrest. Carrying a handgun requires a license, which is obtained only after the applicant is cleared to carry a handgun pursuant to statutory criteria. *See* Ind.Code §§ 35–47–2–1, –3. Given the danger of firearms when improperly used and the connection between firearms and violent crime, we cannot conclude that society is willing to recognize a privacy interest in the markings made by firearms on bullets and casings.

 "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Illinois v. Caballes,* 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Because Engram had no subjective expectation of privacy in the unique markings made by his handgun and because society is not willing to recognize such a privacy interest, we hold that the police department's routine test-firing of weapons legitimately under its custody is not a search protected by the Fourth Amendment. *See State v. Friedel,* 714 N.E.2d 1231, 1236 (Ind.Ct.App.1999) ("In order to challenge the constitutionality of a search, a defendant must have a legitimate expectation of privacy in that which is searched."). The test-firing of Engram's handgun revealed no private information but did provide an additional means to identify his weapon apart from its serial number. Engram's argument that the 2004 test-firing of his handgun violated his Fourth Amendment rights must fail.

Affirmed.

ROBB, J., and MAY, J., concur.