**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOHN PINNOW**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana



FILED

Nov 20 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANNIE ENGRAM, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1204-PC-309 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Master Commissioner
Cause No. 49G03-0607-PC-141347

**November 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Dannie Engram was convicted, following a jury trial, of murder,[1] a felony, and aggravated battery,[2] a Class B felony. His convictions were affirmed on direct appeal, and thereafter, he filed a petition for post-conviction relief ("PCR"). Engram now appeals the denial of his PCR petition, contending that he was denied the effective assistance of trial counsel when his attorney failed to call three witnesses to testify that he was not at the scene when the shooting occurred.

We affirm.[3]

## FACTS AND PROCEDURAL HISTORY

In *Engram v. State*, 893 N.E.2d 744, 745-46 (Ind. Ct. App. 2008), *trans. denied*, a panel of this court affirmed Engram's convictions for the murder of Jasmine Rice ("Rice") and the aggravated battery of Kalin Kelley ("Kelley").[4] In that opinion, we generally set out the facts as follows. Engram was arrested in 2004 after a traffic stop, during which he was found to be driving while his license was suspended. At the time of the stop, Engram informed the officer that he possessed a licensed .45-caliber handgun. Because of the arrest, the police officers took possession of Engram's gun. Pursuant to department policy, police had the weapon test-fired and recorded the results in the National Integrated Ballistics and Identification Network ("2004 ballistics test").

---

[1] *See* Ind. Code § 35-42-1-1.

[2] *See* Ind. Code § 35-42-2-1.5.

[3] We commend the trial court on its thorough findings, which greatly facilitated our appellate review.

[4] Documents in the record before us spell Kelley's name as "Kelly." In this opinion, we use the spelling that Kelley himself gave during his testimony at Engram's trial, "K-e-l-l-e-y." *Tr.* at 605.

2

The events in question occurred between June 30, 2006 and July 1, 2006.[5]  About 10:00 p.m. on the night of June 30, Rice's son, HaShim Rice ("HaShim"), who was ten or eleven years old at the time, was outside shooting firecrackers when a man named Mark Buggs ("Buggs") walked by.  Buggs threw a firecracker at HaShim's older sister, Jasmine Rice ("Jasmine"),[6] and pushed HaShim.  HaShim called his father, who arrived on the scene and began arguing with Buggs.  The argument escalated into a physical altercation before Rice and Buggs were separated.  While the men fought, Jasmine also fought with a girl named Kendra Gaddie ("Gaddie"), who was the daughter of Kim Terry ("Terry").  Later in the evening, at a local convenience store, Metia Manna ("Manna"), Rice's girlfriend and the mother of HaShim and Jasmine, also quarreled with Buggs about the firecracker incident.

In the early morning hours of July 1, 2006, Manna confronted Terry concerning the fight their daughters Jasmine and Gaddie engaged in during the firecracker incident. Rice, Buggs, Kelley, and others were also on the scene.  The encounter escalated to the point that Terry hit Manna in the head with a stick, Rice pushed Terry, Terry hit Rice with a stick, and Rice punched Terry, who fell to the ground.  Seeing all of this, Buggs jumped on Rice's back, and the two began to fight.  Kelley tried unsuccessfully to break up the fight.

---

[5] The record before us reveals that the underlying events occurred on June 30 and July 1, 2006 and not June 6 and June 7, 2006, which are the dates provided in this court's opinion on direct appeal and in the post-conviction court's findings and conclusions.  *Tr.* at 397, 428, 459.  *See Engram v. State*, 893 N.E.2d 744, 745 (Ind. Ct. App. 2008); *Appellant's PCR App.* at 55.

[6] Both father and daughter are named Jasmine Rice.

The fight between Buggs and Rice moved into the street. Witnesses reported seeing a light-skinned, heavyset man with braids or dreadlocks trying to pull Buggs off of Rice. Manna heard Buggs tell someone to shoot Rice. Several shots were fired, but no one saw the shooting. The group then scattered. When officers from the Indianapolis Metropolitan Police Department ("IMPD") arrived, they found Rice face down on the ground; he had been shot four times with a .45-caliber weapon. Kelley was also injured on the scene; he had been shot in the lower abdomen near his hip. Rice died from his gunshot wounds, which had been inflicted at close range, between one and two feet. Kelley recovered after receiving medical treatment.

On August 7, 2006, the State charged Engram with the murder of Rice, the attempted murder of Kelley, and the aggravated battery of Kelley, and the trial court issued a warrant for Engram's arrest. The charges and warrant were based on a probable cause affidavit of an IMPD detective, who swore that Manna had identified Engram as the shooter.[7] On August 17, 2006, the trial court appointed Public Defender Ray Casanova ("Casanova") as Engram's counsel.

On October 17, 2006, the State filed a notice of intent to admit evidence that Engram, at the time of a 2004 arrest, had been in possession of the same caliber of weapon that had been used to kill Rice. Firearms testing revealed that casings and bullets from the 2006 crime scene matched the signature obtained from the 2004 ballistics test. The trial court granted the State's motion to admit the ballistics evidence after an

---

[7] On direct appeal, our court noted that Manna had originally identified a photograph of Tori Daniels, a suspect in another shooting from that night, as the gunman who shot Rice and Kelley. Kelley testified that he identified Engram's photograph as resembling the shooter in this case but that he could not identify Engram as the shooter. *Engram v. State*, 893 N.E.2d 744, 746 n.1 (Ind. Ct. App. 2008).

evidentiary hearing. On October 26, 2006, Casanova filed a motion, on Engram's behalf, to admit defendant to bail. During a hearing on the motion, Casanova objected to alleged deficiencies in the probable cause affidavit that led to Engram's arrest. The trial court denied Engram's motion.

Casanova filed a motion to suppress the results of Engram's 2004 ballistics test. And on June 14, 2007, he filed a motion to dismiss the charges against Engram or, in the alternative, to suppress the 2004 ballistics test results. After an evidentiary hearing and supplemental briefing by both parties, the court denied both motions.

Following a jury trial on December 10 and 11, 2007, a jury acquitted Engram of the attempted murder of Kelley but found him guilty of the murder of Rice and the aggravated battery of Kelley. The trial court sentenced Engram to fifty-five years for murder and ten years for aggravated battery, to be served consecutively, for an aggregate sentence of sixty-five years. *Engram*, 893 N.E.2d at 746.

On direct appeal, Engram's appellate counsel raised two issues, namely, that the trial court abused its discretion when it denied his motion to dismiss, and that the trial court abused its discretion when it admitted into evidence the results of the 2004 ballistics test from the gun found in Engram's possession during the 2004 traffic stop. A panel of this court affirmed Engram's convictions.

On October 29, 2009, Engram filed, pro se, his PCR petition alleging that: (1) Casanova was ineffective in failing to present a defense, file a notice of alibi, and call witnesses to testify on his behalf; (2) appellate counsel was ineffective because, by failing to communicate with Engram during the course of preparing his appeal, the appropriate

5

issues were not raised on appeal; and (3) the trial court abused its discretion in "denying Engram's motion to dismiss and in admitting results of ballistics test over objection." *Appellant's App.* at 56-57.[8] On April 4, 2011, attorney John Pinnow filed his appearance as Engram's PCR counsel.

During the July 19, 2011 hearing on Engram's PCR petition, the trial court heard testimony from Engram, Casanova, and from the three potential witnesses—Buggs; Shericka Hunter ("Hunter"), the mother of Buggs's daughter and the cousin of Terry; and Gaddie, Terry's daughter. Thereafter, the post-conviction court concluded that Engram's trial counsel Casanova was not ineffective. The PCR court denied Engram's request for post-conviction relief.[9]

The post-conviction court's judgment, consisting of twenty-two pages of findings of fact and conclusions, concluded that Casanova was not deficient because the decision of what witnesses to call is one of trial strategy, and nevertheless, Engram "failed to prove a reasonable probability that the outcome of the trial would have been more favorable if Hunter, Buggs, and Gaddie had been called as defense witnesses at trial." *Appellant's PCR App.* at 71, 72.

---

[8] References to the following documents will be cited as follows: the 2008 trial transcripts as *Tr.*; the 2008 Appellant's Appendix (on direct appeal) as *Appellant's App.*; the 2012 post-conviction relief transcript as *PCR Tr.*; and the 2012 Appellant's PCR Appendix as *Appellant's PCR App.* All references to the parties' briefs will be to those filed in in connection with the appeal of the denial of post-conviction relief.

[9] As a footnote to those findings, the post-conviction court stated, "Petitioner did not present evidence in support of claims [(2)] and [(3)] at his evidentiary hearing, nor did he mention those claims in his proposed findings and conclusions, thus appears that Engram has essentially abandoned said claims." *Appellant's App.* at 57 n.1. Nevertheless, the post-conviction court entered its conclusion that "Engram's vague claim of ineffective assistance of [appellate] counsel, said claim fails to provide any basis for relief." *Id.* at 74.

6

Casanova represented Engram throughout the pre-trial period, the jury trial, and sentencing proceedings. As part of its extensive findings, the PCR court found that Casanova's court filings included: a motion for discovery of crime scene video; various notices of deposition of witnesses; a motion to admit Engram to bail and a memorandum of law in support thereof; notice of discovery compliance; numerous supplemental notices of discovery compliance; a request for production of documents from a non-party; a motion to suppress the ballistics evidence that linked Engram to the murder weapon; a motion to dismiss and a memorandum of law in support thereof; a final witness list, which listed nine potential witnesses including Hunter and Buggs; a request for an order to inspect and test all physical evidence, including all ballistics and firearms evidence; and a motion for additional time to conduct voir dire or, in the alternative, a motion that the court ask defendant's tendered voir dire questions. *Appellant's PCR App*. at 57-60.

The PCR court also found that Casanova: vigorously represented Engram "at the let to bail hearing," *id*. at 57 (by presenting an opening statement and the testimony of fourteen witnesses, by cross-examining the State's witness, and by giving a closing argument); vigorously represented Engram at the hearing on the motion to suppress and motion to dismiss (by presenting an opening argument and the testimony of four witnesses); successfully litigated a motion to sever Engram's trial from the trial of co-defendants Buggs and Terry; and successfully moved for a separation of witnesses prior to trial. *Id.* Describing Casanova's testimony at the PCR hearing, the PCR court noted:

> Mr. Casanova summarized that the defense in this case [at trial] was that Engram did not commit the offense, that he was not present, and that it was a misidentification. Mr. Casanova testified that he and his client had talked

7

about an alibi, but Engram could not establish where he was. Mr. Casanova also testified that Engram's father and the mother of Engram's children ["Turner"] were the only two people disclosed to Casanova who could possibly identify where Engram may have been at the time of the crime, but they could not in fact establish his whereabouts.

*Id*. at 62. Engram appeals the denial of his PCR petition only on the basis of the ineffective assistance of his trial counsel Casanova. Additional facts will be supplied as appropriate.

## DISCUSSION AND DECISION

Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012). On appeal from the denial of a PCR petition, a petitioner stands in the position of one appealing from a negative judgment. *Mauricio v. State,* 941 N.E.2d 497, 498 (Ind. 2011). The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. *McCullough*, 973 N.E.2d at 74. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id*.

Engram argues that he did not receive effective assistance of trial counsel. Specifically, he contends that, because his theory of defense was that he had been misidentified as the shooter, trial counsel was ineffective for failing to call defense witnesses Buggs, Hunter, and Gaddie, who would have testified that Engram was not present at the scene of the shooting. The post-conviction court found that Engram was

8

not denied effective assistance of trial counsel because Casanova's decision not to call these witnesses was strategic, and Engram was not prejudiced by Casanova's decision.

The Sixth Amendment to the United States Constitution protects the right to counsel and the right to effective assistance of counsel. "When considering a claim of ineffective assistance of counsel, a 'strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McCullough*, 973 N.E.2d at 74-75 (quoting *Morgan v. State,* 755 N.E.2d 1070, 1073 (Ind. 2001)). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State,* 771 N.E.2d 70, 73 (Ind. 2002).

Engram has a very heavy burden to overcome in substantiating his claims that he received ineffective assistance of trial counsel when Casanova failed to call Buggs, Hunter, and Gaddie as witnesses. To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's ineffective performance, the result would have been different. *McCullough*, 973 N.E.2d at 74. Failure to satisfy either prong will cause the claim to fail. *Id*. at 75.

"[W]e evaluate the competence of counsel by examining whether counsel's performance, *as a whole*, fell below 'an objective standard of reasonableness' based on 'prevailing professional norms.'" *Azania v. State*, 738 N.E.2d 248, 251 (Ind. 2000) (quoting *Woods v. State,* 701 N.E.2d 1208, 1211 (Ind. 1998), *cert. denied,* 528 U.S. 861 (1999)) (emphasis added). That is, effective assistance of counsel is "determined

9

according to the whole of the lawyer's performance and not just on 'the strategy and performance at issue.'" *Id*. (quoting *Butler v. State,* 658 N.E.2d 72, 79 (Ind. 1995)). "Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate." *Id*. (quoting *Davis v. State,* 675 N.E.2d 1097, 1100 (Ind. 1996)).

After assessing the State's case as weak, Casanova litigated a request for bail, he filed and argued a motion to suppress the ballistic evidence that tied Engram to the gun used on the night in question and a motion to dismiss, and he successfully severed Engram's trial from that of co-defendants Buggs and Terry. *Appellant's PCR App*. at 26. Casanova also litigated a motion in limine to keep out certain evidence. *Appellant's App*. at 243-49. During the PCR hearing, Casanova testified that the motion in limine was filed, in part, to ensure that no reference would be made at Engram's trial to the fact that Buggs's theory of defense at his trial was that Engram was the shooter. *PCR Tr*. at 18. Casanova interviewed numerous witnesses and investigated, to no avail, Engram's claim that he had an alibi for the time of the crime. *PCR Tr*. at 8. He also prepared and presented a defense that Engram had been misidentified as the shooter and "presented a proficient, thorough, and zealous closing argument consistent with the theory of defense." *Appellant's PCR App*. at 60 (citing *Tr*. at 887-904). Throughout the pre-trial, trial, and sentencing, Casanova kept Engram informed as to the progress in the case and answered any questions Engram had. *PCR Tr*. at 18-19. Our examination of the record before us convinces us that Casanova's performance as a whole cannot credibly be claimed to have fallen below an objective standard of reasonableness.

10

Additionally, even if failure to call these three witnesses could be deemed to be error, Engram has offered no real evidence that he was prejudiced by the omission of this testimony. On appeal, Engram contends that:

> First, the State's case against Engram was based on his possession of the murder weapon, the .45 caliber Smith and Wesson handgun, two years before the shooting and Manna's identification of him as the shooter. The State presented no evidence Engram possessed that handgun at the time of or in close proximity to the shooting. Manna only identified Engram after she initially identified Tori Daniels as the shooter and it was so dark out she did not see the gun in the hands of the shooter. Second, Buggs' testimony he took a gun from his grandmother's house and it fell out of his pocket during the fight suggests he and not Engram took the murder weapon to the scene. Third, the post-conviction court should not be sure the right man was prosecuted for the shooting. Manna initially identified Tori Daniels as the shooter and said the shooter got out of a blue 1966 Cadillac. Kalin Kell[e]y described the shooter as having dreads or braids. Daniels' brother's blue 1966 Cadillac was found ten to twelve blocks away. A contemporaneous photograph of Daniels showed he had dreadlocks and a beard. Engram's case like that in *Raygoza* had another suspect who resembles the description of the shooter. Fourth, the testimony of Buggs, Hunter and Gaddie supports the trial defense Engram was not present at the scene of the shooting. The trier of fact as in *Raygoza* could have chosen to believe their testimony in conjunction with the weakness of the State's case and concluded the State did not prove Engram's guilt beyond a reasonable doubt.

*Appellant's PCR Br*. at 12-13 (citations to the record omitted).

Engram's argument regarding prejudice relies almost entirely on evidence that was before the jury at trial. The jury heard that Manna initially identified Daniels as the shooter not once, but twice. *Tr*. at 492-94. Right after making the second identification, Manna stated that she was one hundred percent sure that the person she identified—Daniels—was the shooter. *Id*. at 495. The jurors also heard testimony that it was dark in the area of the shooting. *Id*. at 472. By Engram's own account, "The State presented no

11

evidence Engram possessed that handgun at the time of or in close proximity to the shooting." *Appellant's Br.* at 13. Engram's request that we find prejudice based on evidence, most of which was before the jury at trial, is in essence a request that we reweigh the evidence on appeal. On appeal, we may not reweigh the evidence or reassess the credibility of the witnesses. *Rowe v. State*, 912 N.E.2d 441, 443 (Ind. Ct. App. 2009), *aff'd on reh'g*, *trans. denied* (2010). Engram has failed to persuade us that there is a reasonable probability that the result of his trial would have been different but for the absence of the testimony of Engram's brother and original co-defendant Buggs, Buggs's girlfriend Hunter, and Gaddie, the daughter of his original co-defendant Terry.

We agree with the PCR court's well-reasoned conclusion that Engram was provided with effective assistance of trial counsel and was not prejudiced by Casanova's decision to keep Buggs, Hunter, and Gaddie from testifying, which provided as follows:

> Trial counsel's ultimate decision not to call Hunter and Buggs as witnesses is wholly one of strategy that was made in the best interests of his client. Mr. Casanova testified that both Hunter and Buggs described the shooter's car and hairstyle as consistent with Engram's car and hairstyle. Mr. Casanova testified that this was evidence that the State did not otherwise have, and he did not want to risk having Hunter and Buggs strengthen the State's case against Engram, especially because, in trial counsel's opinion, the State's identification evidence was weak. Mr. Casanova added that Buggs' accounts regarding what had occurred were inconsistent, thus Mr. Casanova had concerns about the uncertainty of what he might testify to if called as a witness. This Court declines to second guess these well-reasoned strategic decisions of trial counsel. Mr. Casanova also testified that Engram was in agreement with not calling these witnesses when these risks were discussed with him. [Engram] has failed to prove deficient performance here.

> [Engram] has also failed to prove a reasonable probability that the outcome of the trial would have been more favorable if Hunter, Buggs, and Gaddie had been called as defense witnesses at trial. In addition to the risks

that the testimony of Hunter and Buggs would have harmed Engram as discussed *supra*, the value of these witnesses' testimony would have been minimal. Buggs is Engram's brother and Hunter had a child with Buggs; their close relationships with Engram would likely have diminished the credibility of their testimony that they did not see Engram at the scene of the shooting. Further Hunter testified that she did not see who got out of the car, that she went inside several minutes before gunshots were fired, and that she did not witness the shooting. Hunter reluctantly admitted that she does not know if Engram was outside when the shots were fired. And while Buggs' post-conviction testimony was that Tori Daniels was the shooter, he did not even mention that in his testimony of the events at Engram's sentencing hearing. Further, when asked if he saw Tori Daniels arrive, Buggs answered "Naw" and then said that he "sort of did" but that he was still fighting with Rice at that time. Lastly, Kendra Gaddie's post-conviction testimony regarding the shooter was that she could not really see his face and that she does not know who the shooter was. But then she somewhat inconsistently answered "No" when asked if she saw Engram at the time of the shooting. If she did not see the shooter's face then it seems to follow that she could not testify whether or not the shooter was Engram. Ms. Gaddie added that the only street light was down the street and it was difficult to see.

In light of the extensive attack and impeachment by Mr. Casanova of the State's identification evidence at trial, *see e.g.* T.R. 491-519 (cross examination of Mettia Manna), T.R. 630-42 (cross examination of Kalin Kell[e]y), T.R. 887-904 (closing argument), [Engram] has failed to show a reasonable probability that the equivocal testimony of Hunter, Buggs, and Gaddie would have resulted in a more favorable outcome for Engram. Thus having failed to prove prejudice here as well, [Engram] has failed to meet his burden of proof and the claim of ineffective assistance of trial counsel fails.

*Id.* at 71-73.

To support his theory that trial counsel was ineffective, Engram cites to *Raygoza v. Hurlick*, 474 F.3d 958, 963-65 (7th Cir. 2007)—a case in which the Court of Appeals for the Seventh Circuit granted Raygoza's writ of habeas corpus on the basis that his trial counsel was ineffective for failing to investigate his alibi and for calling only one of the ten alibi witnesses who were available to testify. We find *Raygoza* unpersuasive under

13

the instant facts. In *Raygoza,* unlike in this case, petitioner showed that an investigation of alibi witnesses would have turned up nine additional witnesses, some related and some not related to the defendant, who all would have told a consistent story about where the defendant was the entire night of the crime. *Raygoza*, 474 F.3d at 964. Here, Casanova's investigation of Engram's alibi revealed that the two alibi witnesses he had named—his father and Turner, the mother of Engram's children—could not vouch for Engram's whereabouts on the night in question. Additionally, Buggs, Hunter, and Gaddie, who each were either co-defendants or related to a co-defendant and potentially seen as biased, could only have testified that they did not see Engram at the scene of the shooting. Yet, even this testimony could have been undermined by Hunter's admission that she was not outside at the time of the shooting, and witnesses' inconsistent testimony of the description of the car that arriving on the scene right before the shooting began— Buggs said it was a baby blue 1967 Cadillac, Hunter said it was a dark-colored medium-size car, and Gaddie said it was a dark-blue small car. *PCR Tr.* at 24, 30-34, 38. Unlike in *Raygoza,* where the absence of nine nonrelated witnesses telling a consistent version of events likely had an impact on the outcome of the case, here, given the other evidence presented, the failure to present the testimony of Buggs, Hunter, and Gaddie likely had no effect on the outcome of the trial.

Based on the foregoing, we conclude that Engram was not denied the effective assistance of trial counsel. Therefore, we affirm the post-conviction court's denial of Engram's petition for relief. Affirmed.

NAJAM, J., and MAY, J., concur.

14